RICHARD CAPUTO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caputo v. Commissioner
Docket No. 8479-78
United States Tax Court
T.C. Memo 1983-359; 1983 Tax Ct. Memo LEXIS 426; 46 T.C.M. (CCH) 521; T.C.M. (RIA) 83359; June 20, 1983. John R. Serpico, for the petitioner. Michael L. Balsamo, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner Richard Caputo's Federal income tax for 1974 in the amount of $34,687.93 together with additions to tax under sections 6651(a) [1] and 6653(a) in the amounts of $8,671.98 and $1,734.40, respectively. Concessions having been *427 made by both parties, [2] the sole issue for decision is whether petitioner Richard Caputo is entitled to compute his tax for 1974 pursuant to sections 1301--1305, the income averaging provisions. FINDINGS OF FACT At the time he filed his petition, petitioner Richard Caputo was a legal resident of Brooklyn, New York. He filed an income tax return for 1974 on February 23, 1976, with the District Director, Brooklyn, New York. He filed income tax returns for 1967, 1968 and 1969, reporting gross income in the respective amounts of $2,224, $529.65, and $1,450.58; *428 he filed no income tax returns for 1970 through 1973, inclusive. During 1970 through 1973, petitioner lived with his parents at their home. He did not pay them for rent or food, but otherwise supported himself. He could not, however, estimate his total income or expenditures in those 4 years. For 3 years, 1971 through 1973, petitioner attended school part-time. He has received a disability pension of $62 a month since his discharge from the Army in May 1968. From 1970 through 1974, he has also been involved in several part-time moneymaking activities, including selling stereo equipment, painting, doing construction work, cement work, and laying bathroom tiles. He received payments for most of these jobs in cash and his employers withheld no taxes. In April 1974, petitioner made a cash sale of drugs in the amount of $6,200 to an undercover police officer. He pled guilty to attempted possession and personal possession of drugs. Allowing $500 as the cost of goods sold, respondent determined that petitioner realized a net profit of $5,700 from this drug transaction. In 1973, petitioner paid $7,400 towards the purchase of a two-family house. On February 7, 1974, he paid cash *429 of $37,909 as a closing payment on the purchase of the house. All of the issues raised in the notice of deficiency have been resolved by petitioner and respondent. Petitioner now argues that he is entitled to use the income averaging provisions of section 1301--1305 to compute his tax for 1974. OPINION Sections 1301--1305 provide income averaging relief for an eligible individual whose taxable income for the year in which averaging is elected (the computation year) exceeds 120 percent of his average taxable income in the 4 preceding years (the base period years). If he qualifies under those rules, he may be taxed in the computation year (here 1974) at lower graduated rates. To compute one's tax under the income averaging provisions, it is thus necessary to use the correct taxable income for each base period year. . Petitioner has the burden of proving the amounts of his income in these years. [3]
On the record before us, we must conclude that petitioner is not entitled to use income averaging for 1974 because he has not established the *430 amount of his income for the base period of 1970 through 1973. It is self-evident that without accurate income figures, no reliable average income for that base period can be derived. The evidence shows that petitioner received income from several sources between 1970 and 1974, including the sale of stereos and drugs and from construction, concrete, and tile work. Yet he provided no documenting evidence and no reliable estimate of his income in any one of the base years, not even a "ball park figure". Because of this failure of proof, petitioner is not eligible for the income averaging relief. [4]
Petitioner declares that he did not have enough income to necessitate the filing of income tax returns in the base years and that his income should, therefore, be treated as zero for the purpose of making the requisite income averaging computations. His uncorroborated assertion, however, is insufficient to carry his burden. He must prove the correct amount of his income in each of the *431 base period years. See ; ; . Furthermore, his assertion that he had no income in those years is belied by his $7,400 cash downpayment on a house in late 1973. The source of that money, if not income, has not been satisfactorily explained. Further, his additional cash payment of $37,909 in early February 1974, which he has stipulated to be 1974 income, strongly suggests that he may have had substantial income in the base period. A finding that he had no income in the base period years would require some credible explanation of this sudden appearance of cash. We find incredible petitioner's testimony that, notwithstanding his agreement that the $37,909 was taxable as income in 1974, he received the cash (both the $7,400 and the $37,909) that he used to make the house purchase payments as gifts from his father who has since died. His signed petition alleges that: "The cash for the purchase of the house was borrowed funds." The record is not clear as to what petitioner's position is. Petitioner pleads that *432 he should not be "required to bring into the Court * * * every employer in the Country, every bank in the United States paying interest and every American or foreign corporation paying dividends" to testify "that their records do not indicate income payments to Petitioner" during the base period. True, he is not asked to offer that kind of proof. But we think the Court is due some explanation of the large house purchase payments of currency in late 1973 (during the base period) and early 1974 (shortly after the close of the base period) other than an uncorroborated statement that the money was a gift or a loan from one who is now deceased. If a loan, notes documenting a transaction of this magnitude must have existed. If, indeed, the money came from his father as a loan or gift, bank records may document its transfer and, if not, the trial record should show why not. Further, although petitioner testified as to the financial situation of his mother, he did not call her as a witness to corroborate his testimony that the money came from his father, and the inference is that her testimony would not have helped him. See , *433 affd. . Petitioner's lack of credibility, moreover, is demonstrated by his testimony on his drug dealing. It is stipulated that "on April 1, 1974, petitioner made a cash sale of drugs in the amount of $6,200 to an undercover police officer." Petitioner admitted that he was arrested in 1974 and that he pled guilty to a drug charge. On cross-examination as to possible sources of income, however, he denied without explanation that he sold drugs. [5] Without some believable explanation of these inconsistencies, we cannot give weight to petitioner's uncorroborated declarations that he had no income in the base period years 1970 through 1973. Petitioner, having failed to prove his correct taxable income in the base years, is not entitled to the benefits of income averaging in computing his 1974 tax. *434 To reflect the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. All Rules references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner has conceded that he is properly charged with taxable income of $37,909 which he used in 1974 as a cash payment on a house; that he received taxable net income of $5,700 in 1974 from the sale of drugs to an undercover police officer, and that he is liable for additions to tax under secs. 6651(a), 6653(a) and 6654. Respondent has conceded that an additional $30,000 referred to in the notice of deficiency should not be attributed to petitioner for 1974.↩
3. .↩
4. See ; ; .↩
5. Petitioner testified as follows: Q. Were you selling drugs during the base period year? A. No, I was not. Q. How did you come to make a sale of drugs in 1974? A. I never sold drugs. Q. You never sold drugs in 1974? A. No, I did not. Q. You never were arrested for the sale of drugs in 1974? A. I was arrested for the sale of drugs. I never sold drugs. Q. You plead [sic] to an offense that you were not guilty of; is that your testimony? A. Right.↩